1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DANIEL SAPIEN LOPEZ, SR.,                    CASE NO. CV F 05-00481 LJO TAG HC

12                    Petitioner,               **ORDER DENYING AMENDED PETITION**
                                               **FOR WRIT OF HABEAS CORPUS WITH**
13   vs.                                        **PREJUDICE; DIRECTING CLERK OF**
                                               **COURT TO ENTER JUDGMENT FOR**
14   ROSEANNE CAMPBELL, et al.,                 **RESPONDENTS; DECLINING ISSUANCE**
                                               **OF CERTIFICATE OF APPEALABILITY**
15                    Respondents.

16   _____/

17
         On April 11, 2005, Daniel Sapien Lopez, Sr. ("Petitioner"), a *pro se* California prisoner, filed
18
     a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254
19
     ("Petition").[1]
20
         On August 17, 2005, Petitioner filed a "Motion for Abeyance," wherein Petitioner requested that
21
     his Petition be stayed pending exhaustion of an ineffective assistance of counsel claim in the state courts.
22
     On December 29, 2005, the Magistrate Judge granted the Motion for Abeyance and stayed the Petition.
23
     On March 30, 2007, Petitioner filed a second "Motion for Stay and Abeyance," wherein Petitioner
24
     requested a stay to exhaust a claim based on *Cunningham v. California*, 549 U.S. 270 (2007).  On
25
     August 30, 2007, the Magistrate Judge denied Petitioner's second Motion for Stay and concurrently
26

27   _____

28          [1]       Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302,
     the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

                                                    1

lifted the original stay ordered on December 29, 2005, after finding Petitioner's ineffective assistance claim exhausted.

On September 21, 2007, Petitioner filed an Amended Petition. On March 7, 2008, Roseanne Campbell ("Respondent") filed an Answer to the Amended Petition ("Answer"). On March 17, 2008, Petitioner filed a Motion to Amend to add an ineffective assistance of counsel claim. On May 14, 2008, the Magistrate Judge denied the Motion to Amend because Petitioner had already included the ineffective assistance claim in his Amended Petition. On May 28, 2008, Petitioner filed a Motion to Dismiss the Answer, which the Magistrate Judge on October 27, 2008, re-designated as Petitioner's Traverse. Thus, this matter is ready for decision.

**PROCEDURAL HISTORY**

After waiving jury trial, on April 12, 2000, a Fresno County Superior Court judge convicted Petitioner of two counts first degree residential robbery (Cal. Penal Code § 211, Counts 1 & 2), one count second degree robbery (Cal. Penal Code § 211, Count 11), three counts receiving stolen property (Cal. Penal Code § 496(a), Counts 3, 8, & 10), one count possession of heroin (Cal. Health & Safety Code § 11350(a), Count 4), two counts carjacking (Cal. Penal Code § 215(a), Counts 5 & 6), one count unlawful driving or taking of a vehicle (Cal. Veh. Code § 10851(a), Count 9), and one count first degree residential burglary (Cal. Penal Code §§ 459, 460, Count 12). (2 Clerk's Transcript ("CT") 391; 4 Reporter's Transcript ("RT") 536-37.)

The trial court found true the impersonation of a peace officer (Cal. Penal Code §§ 538d, 667.17, Counts 1 & 2), use of a firearm (Cal. Penal Code §§ 12022.5(a)(1), 12022.53(b), Counts 1, 2, & 11), and use of a deadly or dangerous weapon (Cal. Penal Code § 12022(b), Counts 5 & 6). (2 CT 391; 4 RT 536-37.) The court further found Petitioner suffered two prior serious felony convictions (Cal. Penal Code § 667(a)), suffered four prior serious felonies within the meaning of California's "Three Strikes" law (Cal. Penal Code §§ 667(b)-(I), 1170.12(a)-(d)), and served one prior prison term (Cal. Penal Code § 667.5). (2 CT 391; 4 RT 537-38.) On June 29, 2000, the court sentenced Petitioner to 47 years and 8 months, plus 154 years to life in state prison. (2 CT 440-41; 6 RT 725.)

Petitioner appealed the judgment to the California Court of Appeal. On April 10, 2002, the court of appeal affirmed the judgment and sentence in a reasoned opinion. (Lodged Doc. ("LD") 5.)

Petitioner thereafter filed a petition for review in the California Supreme Court. (LD 6.) On June 26, 2002, the California Supreme Court granted the petition for review, limited to whether carjacking requires asportation. (LD 7.) On November 24, 2003, the California Supreme Court reversed the California Court of Appeal with regard to one of the carjacking counts, finding Count 5 punishable as an attempted carjacking, and remanded the case back to the court of appeal. (LD 11 at 13-14.)[2] On January 14, 2004, the California Court of Appeal amended its April 10, 2002, opinion, reducing the carjacking conviction in Count 5 to attempted carjacking and affirming Petitioner's judgment in all other respects. (LD 12 at 25.) On March 28, 2005, the Fresno County Superior Court issued an amended Abstract of Judgment. (LD 1.)

On April 11, 2005, Petitioner filed his federal Petition. On August 19, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (LD 13.) On June 14, 2006, the California Supreme Court denied the petition with citation to *In re Swain*, 34 Cal. 2d 300, 304 (1949) and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995). (LD 14.) On August 25, 2006, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court, which that court denied on March 14, 2007, with citation to *In re Miller*, 17 Cal. 2d 734 (1941), *In re Swain*, and *People v. Duvall*. (LD 15-16.) On May 4, 2007, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court, which that court denied on June 4, 2007, finding Petitioner failed to present a prima facie case for relief. (LD 17-18.)

## SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL[3]

> Omar Mohammed awoke on April 29, 1999, and saw someone standing in the door to his bedroom. Mohammed got up and the intruder fled. Nothing was missing from the apartment, but a window had been broken to gain entry. [Petitioner]'s fingerprint was

---

[2]    Pages 6-13 of the California Supreme Court opinion were omitted in LD 11. The Court takes judicial notice of the state appellate court records for Petitioner's case, including the missing pages from LD 11, which are available on the Internet at http://appellatecases.courtinfo.ca.gov. *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (stating that federal courts may take judicial notice of relevant state court records in federal habeas proceedings).

[3]    Because Petitioner is challenging the sufficiency of the evidence with respect to Counts 5 and 11, the Court has reviewed, independently, the state court record. *See Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997). Based on this review, the Court adopts the factual background from the California Court of Appeal opinion on remand from the California Supreme Court as a fair and accurate summary of the evidence presented at trial. *See id.*; *see also* 28 U.S.C. § 2254(d)(2), (e)(1).

recovered from the apartment. (Count twelve-first degree burglary)[4]

On July 1, 1999, shortly after 3 p.m., Wa Vue Yang was sitting in the driver's seat of his parked vehicle waiting for his wife to come out of the market. [Petitioner] approached the driver's side of the vehicle and asked Yang if he wanted to buy a watch. Yang declined because he already owned a watch. [Petitioner] pulled out a gun and fired a shot into the ground. [Petitioner] pointed the gun at Yang's face and told him to get out of the vehicle. Yang got out of the vehicle, leaving the keys in the ignition. [Petitioner] got in the vehicle and threw his backpack onto the passenger seat. Yang realized he had left some checks in the van. Yang wanted the checks so he turned around, returned to the vehicle, and confronted [Petitioner]. He was not as afraid of the gun as he had been initially because, after thinking about it, he thought the gun was an air gun. [Petitioner] pointed a gun at Yang and pulled the trigger twice; the gun did not fire. [Petitioner] fled, leaving his backpack in the vehicle. Inside the backpack was a video rental card belonging to [Petitioner] and his mother. (Count five, carjacking, plus personal use of a weapon enhancement.)

At approximately 3:30 p.m. on July 1, 1999, Lao Cha was getting into her car after shopping at a store that was approximately one quarter of a mile from Yang's vehicle. [Petitioner] ran a bicycle into her leg. When Cha turned, [Petitioner] pointed a gun to her head. [Petitioner] told her to run for her life. Cha ran, and [Petitioner] drove off in her red Toyota Tercel. (Count six-carjacking, plus personal use of a weapon; count nine-unlawful taking of a vehicle.)

On July 8, 1999, security guard Rick Lopez[5] was dispatched by his dispatcher to a nearby business, Fresno Firearms. When Lopez arrived, he saw a red car on the sidewalk. The front end of the car had been driven into the building. Lopez saw [Petitioner] leaving the building with items in his hand. He was about 50 feet from [Petitioner]; Lopez yelled at him. [Petitioner] pulled out a semiautomatic handgun and pointed it directly at Lopez; Lopez's attention was focused on the gun. [Petitioner] fled. The business owner came to the scene, where he discovered several knives were missing. Blood drops in the business were tested and matched [Petitioner's] DNA at a ratio of 1 in 52,000. (Count eleven-second degree robbery, and personal use of a firearm.)

While patrolling on July 11, 1999, Officer David Rady spotted [Petitioner] driving a red Toyota Tercel with license plate number 3ADJ108. These license plates had been stolen from another vehicle earlier. [Petitioner] fled in the car at a high rate of speed. Officer Rady discontinued his pursuit of [Petitioner] because there were children in the area. (Count ten-misdemeanor possession of stolen property.)

On July 12, 1999, at approximately 7 a.m., Martha Garcia and Israel Cruz were asleep in their apartment. They heard a noise. Garcia got up to check on the noise. She encountered [Petitioner] standing in her living room dressed in the uniform of a Madera police officer. [Petitioner] pointed a gun at her and ordered her to sit down. At this time Cruz entered the room. [Petitioner] ordered Cruz to his knees and handcuffed him. He asked Cruz for money. Cruz took [Petitioner] into the kitchen to retrieve some money. [Petitioner] took Cruz into the garage and Garcia fled to the home of a neighbor.

Garcia told her neighbor, Jose Lopez, about the man in their apartment. Lopez went to investigate. He saw [Petitioner] standing in the apartment dressed in a police uniform and holding a gun, and saw that Cruz was handcuffed. [Petitioner] asked Lopez if he wanted to go to jail and told him to leave. Lopez left, returned to his apartment, and instructed his wife to call the police. (Counts one and two-robbery, plus a personal use of a weapon enhancement for both counts, and an impersonating a police officer

---

4        [Court of Appeal footnote 1:] For ease of reference, we parenthetically list the count(s) of the later-filed information to which each incident relates.

5        [Court of Appeal footnote 2:] We refer to Rick Lopez by his first and last name to distinguish him from [Petitioner]. We do the same for witness Jose Lopez in counts one and two.

4

enhancement for both counts.) [Petitioner] fled.

Police officer Peter Marez was responding to the scene of the robbery of Cruz and Garcia. He met Cruz in the alley and Cruz pointed in the direction of [Petitioner]. [Petitioner] was walking down the alley wearing a police uniform. Marez was informed that a police uniform had been stolen in an earlier burglary. He followed [Petitioner]. [Petitioner] climbed a fence and went onto some church property. Marez saw [Petitioner] run from the property; he was no longer wearing the uniform. [Petitioner] was arrested and later charged with crimes. Marez went to the church grounds and found a gym bag containing a gun belt, a gun, a police uniform and badge. In addition, heroin was found inside the bag. (Count three-receiving stolen property; count four-possession of a controlled substance.)

(LD 12 at 2-5.)

## PETITIONER'S CLAIMS

1. Petitioner's jury trial waiver as to the charged offenses is invalid (Am. Pet. 9, 17);

2. Insufficient evidence supported Petitioner's conviction under Counts 5 and 11[6] and the firearm finding under Count 11 (*id.* 9, 17-18);

3. Petitioner's convictions under Counts 1, 2, and 5 are based upon inadmissible double hearsay (*id.* 10, 18);

4. Insufficient evidence supported Petitioner's prior "strike" findings (*id.*);

5. The trial court erred in imposing two enhancements for impersonation of a police officer (*id.*);

6. California's Three Strikes law is unconstitutionally vague and did not provide Petitioner with adequate notice of his authorized sentence (*id.*);

7. Cumulative error deprived Petitioner of due process of law and a fair trial (*id.* 11, 18);

8. The imposition of a sentence term of 154 years to life plus 47 years upon Petitioner constitutes cruel and unusual punishment (*id.*);

9. Petitioner's jury trial waiver as to the prior conviction allegations is invalid (*id.* 11, 19); and

10. Ineffective assistance of trial counsel (*id.* 116).

## STANDARD OF REVIEW

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is subject to its provisions. *See Calderon v. U.S. Dist. Court (Beeler)*, 128 F.3d 1283, 1286 (9th Cir. 1997), *overruled on other*

---

[6] Petitioner mistakenly refers to the robbery conviction under Count 11 as "Count 6" in his Amended Petition. (*Compare* Am. Pet. 9 *with id.* 17 *and* LD 1.)

*grounds by Calderon v. U.S. Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998) (en banc). The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 654 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by

§ 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a State court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 27. An "unreasonable application" is different from an erroneous or incorrect one. *Williams*, 529 U.S. at 409-10; *see also Woodford*, 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 686 (2002).

A state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## DISCUSSION

### Claim One

In his first claim, Petitioner contends that his jury trial waiver as to the charged offenses was invalid because he was not advised that waiver of a jury trial encompassed both the substantive counts and the prior conviction enhancements. (Am. Pet. 9, 34-41.) Petitioner claims that he did not knowingly and intelligently waive his jury trial right with respect to his prior conviction allegations, and that this invalidates the jury trial waiver as to the charged offenses and the prior conviction allegations in their entirety. (*Id.*)

Petitioner did not raise this claim before the California Supreme Court in his petition for review, (*see* LD 6 at 2), but did raise it in his subsequent two habeas petitions to the California Supreme Court (*see* LD 13, 15). Because the California Supreme Court denied the two habeas petitions with citations

7

and no reasoned opinion (*see* LD 14, 16), this Court relies on the last reasoned decision on the merits of this claim, that of the California Court of Appeal on direct review (*see* LD 5, 12). *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).[7] In rejecting Petitioner's claim, the appellate court stated:

## I. Waiver of Jury Trial

The case was called for jury trial. The parties agreed to proceed with a court trial based on the police reports and the transcript of the preliminary hearing. [Petitioner] completed a waiver of rights form that he initialed and signed. The waiver included the right to a jury trial. The court explained to [Petitioner] what a jury trial was and informed him that he had a right to a jury trial. [Petitioner] waived his right to a jury trial. The court took a waiver of additional rights.

While the district attorney was informing the court what information would be provided for the court's consideration, the following occurred:

"[MR. TREISMAN, DISTRICT ATTORNEY] ... And, additionally, there are priors that will ultimately be considered by the Court. We have a 969b package and I'm assuming that the same rights-they have not yet been bifurcated-are waived by [Petitioner] for that purpose. And we'll submit the 969b package, if that's agreeable with Mr. Revvill and his client.

"MR. REVVILL [DEFENSE COUNSEL] Yes.

"THE COURT: All right. So Mr.-if they were in the Information, they should be covered, the priors.

"MR. TREISMAN: Yes. And I believe they are in the Information. But I brought them up separately only because of any concern anyone might have, so that the record is complete.

"THE COURT: I would feel that if he's waiving his right to jury trial then he's waiving it with respect to the priors also.

"MR. TREISMAN: Yes, sir. That's my understanding."

The court reviewed the documents given to it. Before the court made any determinations, it went over some additional items with [Petitioner]. It questioned [Petitioner] whether he was aware that at the time of the submission of the reports there was a high probability that the court would find him guilty of many, if not all, of the counts. [Petitioner] stated he was aware of that. The court also questioned him whether he was aware that if the court found him guilty he would be looking at the application of the three strikes law and, at the minimum, a life sentence. [Petitioner] stated he was

---

[7]     In *Ylst*, the United States Supreme Court noted that although a California Supreme Court's citation to one or more cases, without elaboration, is not "silent, neither was it informative with respect to the question" before the Court. *Ylst*, 501 U.S. at 805. The Court then proceeded to utilize the last reasoned decision, that of the appellate court. *Id.* at 805-06. Here, the California Supreme Court denied Petitioner's first habeas petition with citation to *In re Swain* and *People v. Duvall*, both of which state that facts relied upon in a habeas petition must be alleged with particularity. (LD 14); *see Ylst*, 501 U.S. at 805; *Gaston v. Palmer*, 417 F.3d 1030, 1036-37 (9th Cir. 2005). Petitioner's second habeas petition to the California Supreme Court was denied with citation to *In re Swain*, *People v. Duvall*, and *In re Miller*, which states that the court is denying the petition for the same reasons that it denied the previous one. (LD 16); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 n.1 (9th Cir. 1986). Because the California Supreme Court in its citations was not "informative with respect to the question" of Petitioner's first claim here, the Court utilizes the last reasoned opinion on this claim, that of the California Court of Appeal on direct review. (*See* LD 12.)

Furthermore, to the extent that Petitioner's first claim is unexhausted due to the California Supreme Court's citations to *In re Swain*, *People v. Duvall*, and *In re Miller*, the Court considers Petitioner's claim on the merits pursuant to 28 U.S.C. § 2254(b)(2), as discussed *infra*. *See Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding than an unexhausted claim may be dismissed pursuant to § 2254(b)(2) "when it is perfectly clear that the applicant does not raise even a colorable claim").

8

aware of that. The court asked him again if he understood the ramifications of the three strikes law when he submitted the case to the court. [Petitioner] again replied yes. The court asked [Petitioner] if he wanted to proceed based on his knowledge of all of the ramifications. [Petitioner] said he wanted to proceed. The People pointed out that [Petitioner] was aware that he was facing just shy of 400 years to life as a maximum sentence. The court asked [Petitioner] if that was correct. He replied yes.

[Petitioner] claims that his jury trial waiver was not adequate because he was not advised that a waiver of a jury trial encompassed both the substantive counts and the prior conviction enhancements. [Petitioner] asserts he "needed to know in clearer terms whether his jury trial waiver meant he lost his right to jury trial on life-altering 'strike' allegations before agreeing to the slow plea."

"Where the whole cause-substantive offenses and sentencing allegations-is tried in a unitary proceeding, a constitutionally effective waiver of jury trial is required." (*People v. Vera* (1997) 15 Cal.4th 269, 277.) "'It is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury.'" (*People v. Berutko* (1969) 71 Cal.2d 84, 94.)

[Petitioner] personally waived his right to a jury trial. This waiver is deemed to apply to all the causes before the court at that time. The sentencing allegations were contained in the information filed against [Petitioner]. He was clearly aware of them. The court was not required to advise [Petitioner] that he could have a court trial on the underlying offenses and a jury trial on the priors.

Furthermore, the record reflects the issue of whether the waiver covered the trial of the priors as well as the other allegations was discussed in [Petitioner's] presence. His counsel agreed that the waiver covered the entire proceedings. In addition, the court questioned [Petitioner] whether he understood that his submittal to the court encompassed the strike allegations. [Petitioner] replied that he was aware of this and expressly agreed to proceed on this basis. The court thus made it clear that [Petitioner] was waiving his right to a jury trial and the court would be considering the strike allegations in the course of the proceedings. [Petitioner] expressly stated his awareness of this factor and agreed to proceed with a court trial. [Petitioner] was clearly aware that his jury trial waiver applied to the entire proceeding. The waiver and further discussions sufficiently apprised [Petitioner] of the right he was giving up.

(LD 12 at 7-9.)

The Fourteenth Amendment guarantees a right of jury trial in all criminal cases that, were they to be tried in a federal court, would come within the Sixth Amendment's guarantee. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). The right to jury trial in serious criminal cases is a fundamental right and hence must be recognized by states as part of their obligations to extend due process of law to all persons within their jurisdiction. *Id.* at 154-55. Before any waiver to a jury trial can become effective, "the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78, 90 (1970). "The purpose of the 'knowing and voluntary' inquiry [of the waiver of constitutional rights] . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993).

This Court agrees with the court of appeal's analysis. The trial court questioned Petitioner whether he understood (1) his right to a jury trial, (2) that a jury trial consists of twelve jurors selected from the community that reviews evidence and that each juror must find beyond a reasonable doubt each and every element of each crime to convict, (3) that Petitioner would give up his right to jury trial and submit to the court as trier of fact, (4) that Petitioner would give up his right to confront witnesses, (5) that Petitioner would give up his right to remain silent, and (6) that the court would rely on the police reports and transcript of the preliminary hearing. (*See* 4 RT 501-06.) Petitioner acknowledged affirmatively in open court to each of the trial court's questions. (*Id.*) In addition, Petitioner acknowledged that he spoke with his attorney with regard to these rights. (*Id.* at 505.) Petitioner signed in writing his waiver of rights and stated that he understood his actions. (*Id.*) The Court finds the totality of the circumstances to indicate Petitioner knowingly, voluntarily, and intelligently waived his right to jury trial on the charged offenses. *Godinez*, 509 U.S. at 400-01; *Patton*, 281 U.S. at 312; *see also United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (stating that to determine whether a defendant's jury waiver is voluntary, knowing, and intelligent, "[t]he district court should inform the defendant that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial").

Petitioner cites no United States Supreme Court authority, and this Court has found none, which states that a knowing, voluntary, and intelligent waiver of a defendant's jury trial rights is abrogated by the failure to provide advisements on prior conviction allegations. "Petitioner has no federal right to have a jury decide" the "existence of a prior conviction." *Davis v. Woodford*, 446 F.3d 957, 963 (9th Cir. 2006). The fact that Petitioner had a state statutory right to a jury trial on his prior convictions does not avail him. *See Dillard v. Roe*, 244 F.3d 758, 769 (9th Cir.2001) (discussing Cal. Penal Code § 1025). The Constitution permits prior convictions to be used to enhance a sentence, without being submitted to a jury, so long as the convictions were themselves obtained in proceedings that required the right to a jury trial and proof beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 488 (2000). There is no suggestion that Petitioner's prior convictions were obtained without the requisite

1  procedural safeguards.[8]

2     Based on the foregoing, the Court finds that the California courts' rejection of Petitioner's jury

3  trial waiver claim was neither contrary to, nor involved an unreasonable application of, clearly

4  established federal law, as determined by the United States Supreme Court.  Thus, habeas relief is not

5  warranted on this claim.

6                                              **Claim Two**

7     In his second claim, Petitioner asserts that insufficient evidence supported his convictions for

8  carjacking under Count 5 and robbery under Count 11, and the firearm use finding under Count 11.

9  (Am. Pet. 9, 42-49.)

10    As to the carjacking conviction under Count 5, Petitioner argues that the evidence discloses

11  attempted carjacking and not a completed carjacking.  (*Id.* 9.)  The California Supreme Court reversed

12  the California Court of Appeal with regard to this count, finding Count 5 punishable as an attempted

13  carjacking, and remanded the case back to the court of appeal.  (LD 11 at 13-14.)  The California Court

14  of Appeal thereafter amended its original opinion, reducing the carjacking conviction in Count 5 to

15  attempted carjacking.  (LD 12 at 25.)  Subsequently, the Fresno County Superior Court issued an

16  amended Abstract of Judgment.  (LD 1.)  Thus, Petitioner has already received relief on this claim, and

17  federal habeas relief is unwarranted.

18    On direct review, the California Supreme Court denied Petitioner's insufficient evidence claims

19  with regard to Count 11 and the related firearm use finding without comment or citation to authority.

20  (*See* LD 6-7.)  The last reasoned decision on these claims is that of the California Court of Appeal on

21  direct review.  *Ylst*, 501 U.S. at 803; *see supra* note 7.  In denying the these claims, the court of appeal

22  stated:

23        **III. Sufficiency of the Evidence of Robbery of the Security Guard**
          On July 8, 1999, security guard Rick Lopez was dispatched to a nearby business,
24     Fresno Firearms. When Lopez arrived he saw a red car on the sidewalk. The front end
       of the car had been driven into the building. Lopez saw [Petitioner] leaving the building
25     with items in his hand. Lopez was about 50 feet from [Petitioner]. He yelled at
       [Petitioner]. [Petitioner] pulled out a semiautomatic handgun and pointed it directly at
26     Lopez. Lopez focused his attention on the gun. [Petitioner] fled. [Petitioner] was

27  ───────────────────

28        [8]    With regard to the trial court's finding that Petitioner's prior convictions constituted strikes pursuant to
       California's Three Strikes law, see the discussion under Claim Four, *infra*.

                                                   11

convicted in count eleven of the robbery of Lopez.

While acknowledging that a security guard employed by a business is deemed to be in constructive possession of property owned by that business and can be the victim of a robbery, [Petitioner] argues there was insufficient evidence to show Rick Lopez was an employee of the store; therefore he cannot be convicted of the robbery of Lopez. In addition, [Petitioner] claims there was insufficient evidence that the property was in the immediate presence of Lopez because he never came into an area close enough to exercise physical control over the property nor was he ever previously in possession of the property and later detached from it during the course of the robbery.

"[A]n essential element of the crime of robbery is that property be taken from the possession of the victim." (*People v. Nguyen* (2000) 24 Cal.4th 756, 762.) Victims of a robbery are persons in either constructive or actual possession of the property taken. (*Id.* at p. 764.) A security guard has constructive possession of property taken from the store in which he is employed. (*People v. Miller* (1977) 18 Cal.3d 873, 881.) A Good Samaritan or a security guard employed by a nearby business who attempts to intervene in a robbery is not properly a victim of a robbery because he or she does not have a sufficient interest in the property to be a robbery victim. (*Sykes v. Superior Court* (1994) 30 Cal.App.4th 479, 484; *People v. Galoia* (1994) 31 Cal.App.4th 595, 599.)

[Petitioner] argues that the mere fact that Rick Lopez was dispatched to the store alarm of Fresno Firearms was insufficient to support an inference that he was employed as a security guard by the store from which the property was taken. He therefore contends Lopez did not have a sufficient interest in the property to be a robbery victim.

On appeal "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.)

The only logical inference from the fact that Rick Lopez was dispatched by his employer to a store alarm at Fresno Firearms is that he was employed as a security guard for Fresno Firearms.

Next, [Petitioner] argues that, even if Lopez is found to be a store employee, the taking was not from his immediate presence because the property was not stolen from an area within which Lopez could reasonably be expected to exercise some physical control over the property.

"[T]he decisions addressing the 'immediate presence' element of robbery have focused on whether the taken property was located in an area in which the victim could have expected to take effective steps to retain control over his property." (*People v. Frye* (1998) 18 Cal.4th 894, 956.) To satisfy the immediate presence requirement, the property must have been within the reach, inspection, observation, or control of the victim so that the victim could have retained possession of the property if not overcome by violence or prevented by fear. (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627.) In *Hayes* the court gave the following example of a taking that was not from the victim's immediate presence. "For example, a person might enter the victim's home and there, by the use of force or fear, compel the victim to reveal the combination of a safe located many miles away in the victim's office. The culprit at the victim's house could then relay the combination to a confederate waiting in or near the office, who could use it to open the safe and take its contents before the victim could reach the office or otherwise interfere with the taking. In such a case, the criminals would have accomplished the taking by force or fear and yet not have taken property from the person or immediate presence of the victim." (*Id.* at p. 627.)

From the evidence presented here, it could reasonably have been inferred that had Rick Lopez not been confronted with a gun, he could have taken effective steps to retain control of the property or interfere with the taking. Substantial evidence supports the

12

count eleven robbery conviction.

## IV. Sufficiency of Evidence of Firearm Use in Count Eleven

Rick Lopez testified that when he confronted [Petitioner] as he was leaving Fresno Firearms, [Petitioner] pointed a semiautomatic firearm at him. Lopez also testified that he focused on the gun. The court found that [Petitioner] personally used a firearm (§ 12022.53) in the commission of the robbery.

For purposes of the gun enhancement here, a firearm does not include instruments such as gas-operated pellet or BB guns. (*People v. Vasquez* (1992) 7 Cal.App.4th 763, 767; § 12001.)

The victims of the carjackings that occurred on July 1, 1999, were uncertain whether the gun possessed by [Petitioner] was a real gun. During the proceedings before the trial court, the parties discussed whether there was sufficient evidence to prove that [Petitioner] possessed a firearm, as opposed to a pellet gun, for some of the carjacking charges. The defense requested the court to state its view of the evidence of the firearm use regarding the two carjacking counts, because, if the court believed the firearm use was proved, [Petitioner] wanted to present evidence to dispute this finding. The parties discussed the issue. The court stated that the police officer's firearm was stolen on July 7, so it is clear that the weapon used in the carjackings on July 1 was not the stolen firearm. The People acknowledged the weakness in their evidence. Defense counsel indicated that [Petitioner] was prepared to testify that he was the person who accosted the carjacking victims and at that time he was armed with a pellet gun. The court inquired into what the pellet gun looked like. [Petitioner] offered to the court, "It's like a revolver." The prosecution agreed that this type of gun looks like a revolver, is a carbon dioxide driven weapon, and is not a firearm within the meaning of the law. The prosecution then agreed to reduce the firearm enhancement on counts five and six (the carjackings) to personal use of a deadly or dangerous weapon. (§ 12022, subd. (b).)

The count eleven robbery of security guard Rick Lopez occurred on July 8, 1999. The burglary of police officer Noyer's residence occurred on July 9, 1999; one of the items stolen was a firearm. Although the firearm use allegation for the count eleven robbery of Lopez was not considered during the above discussion regarding striking the firearm use enhancement for the carjackings, the court erroneously stated that the police officer's gun was stolen on July 7. In addition the prosecution argued that the timing of the Lopez robbery would suggest that [Petitioner] had access to a firearm. Thus, [Petitioner] now argues that the court's erroneous belief that the police officer's gun was stolen before the robbery of Lopez affected the court's decision on the firearm enhancement and substantial evidence does not support the court's finding.

Although the erroneous assumption that the gun was stolen before the robbery could have had the potential to bolster the position that [Petitioner] used a real firearm during the commission of the robbery, under the circumstances it could not have had an appreciable effect on the outcome. [Petitioner] informed the court that the gun he used on July 1 was a pellet gun (which is not a firearm) and looked like a revolver. A revolver and a semiautomatic handgun are clearly two different types of weapons and are not easily confused by someone with knowledge about guns. It can reasonably be inferred that Rick Lopez possessed knowledge regarding guns, by virtue of his position as a security officer, and from the fact that a person without this knowledge would not have been able to specifically identify the weapon used as a semiautomatic handgun and most likely would have described the item in [Petitioner's] hand as "a gun." There was nothing in the record to dispute Lopez's description of the gun used by [Petitioner] as a semiautomatic firearm. Thus the court's consideration of this erroneous information could not have altered the conclusion reached by the court.

Contrary to [Petitioner's] position that the record was too "scant" to infer that [Petitioner] possessed a firearm, substantial evidence supports the trial court's finding that [Petitioner] possessed a firearm during the robbery of Rick Lopez. (LD 12 at 11-15.)

13

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under *Jackson v. Virginia*, 443 U.S. 307 (1979), "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Wright v. West*, 505 U.S. 277, 284 (1992).

When the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326. "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution.'" *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (*quoting Jackson*, 443 U.S. at 319). Additionally, "'[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted). The federal court must refer to the substantive elements of the criminal offense as defined by state law and look to state law to determine what evidence is necessary to convict on the crime charged. *Jackson*, 443 U.S. at 324 n.16; *Juan H.*, 408 F.3d at 1275.

The California standard for determining the sufficiency of evidence to support a conviction has been held by the California Supreme Court to be identical to the federal standard enunciated by the United States Supreme Court in *Jackson*. *See People v. Johnson*, 26 Cal. 3d 557, 576 (1980). In addition, the AEDPA requires the federal court to "apply the standards of *Jackson* with an additional layer of deference." *Juan H.*, 408 F.3d at 1274. The federal court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case." *Id.* at 1275 & n.13.

Petitioner contends that his robbery conviction under Count 11 must be reversed in the absence of evidence that the store's property was possessed by the security guard or taken from his immediate

14

presence. (Am. Pet. 9, 44-46.) Under California law, robbery is defined as the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211.

In analyzing Petitioner's claim, the court of appeal noted Petitioner's acknowledgment that a security guard employed by a business is deemed to be in constructive possession of property owned by that business, but the court then inferred that the security guard "was dispatched by his employer to a store alarm at Fresno Firearms [and] that he was *employed* as a security guard for Fresno Firearms." (LD 12 at 11-12 (emphasis added).) A police report, corroborated by the officer that wrote it, stated that the security guard "was advised of the alarm from his dispatcher, with Turner Security, and he responded to Fresno Firearms." (2 CT 332; *see* 1 CT 79.) Although it is unclear what the exact nature of the security guard's relationship is with respect to Fresno Firearms, the court of appeal's finding that he was an employee of Fresno Firearms is supported by the evidence showing that the security guard responded to Fresno Firearms. The court's inference is accorded deference, especially in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 326; *Walters*, 45 F.3d at 1358.

With regard to Petitioner's argument that the store's property was not taken from the security guard's immediate presence, the court of appeal reiterated state law stating that to satisfy the immediate presence requirement, "the property must have been within the reach, inspection, observation, or control of the victim so that the victim could have retained possession of the property if not overcome by violence or prevented by fear." (LD 12 at 13 (*citing Hayes*, 52 Cal. 3d at 626-27).) The court then found that it could be reasonably inferred that "had [the security guard] not been confronted with a gun, he could have taken effective steps to retain control of the property or interfere with the taking." (*Id.*) As the court had already found constructive possession of the items by an employee of the store (the security guard), the court had sufficient evidence to infer that the security guard could have retained control of the items or interfered with Petitioner's taking of the items if Petitioner did not instill fear in the security guard by pointing a gun at him. (*See* 1 CT 80; 2 CT 333.) Accordingly, viewing the evidence in the light most favorable to the prosecution and presuming that the trial court resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational trier of fact could find the essential elements of robbery in Count 11 beyond a reasonable doubt. *Jackson*, 443 U.S. at 326;

*Walters*, 45 F.3d at 1358.

Petitioner also claims the firearm use finding under Count 11 is unsupported by substantial evidence because the gun used was a pellet gun. (Am. Pet. 9, 47-49.) The court of appeal noted that a firearm does not include instruments such as gas-operated pellet or BB guns. (LD 12 at 13 (*citing* Cal. Penal. Code § 12001; *Vasquez*, 7 Cal. App. 4th at 767).)

Petitioner, here and before the court of appeal, seizes on the trial court's apparent error with regard to the date that Petitioner stole a Glock semiautomatic firearm. The trial court utilized July 7, 1999, as the date that Petitioner stole the Glock from a police officer's residence, and found that it was possible for Petitioner to have the same Glock on July 8, 1999, the date that Petitioner committed the Count 11 robbery. (4 RT 519-20.) Petitioner argues, and the court of appeal concedes, that the burglary of the police officer's residence and the theft of the Glock occurred on July 9, 1999, after Petitioner committed the robbery. (LD 12 at 14; Am. Pet. 48.) However, the court of appeal found that "[a]lthough the erroneous assumption that the gun was stolen before the robbery could have had the potential to bolster the position that [Petitioner] used a real firearm during the commission of the robbery, under the circumstances it could not have had an appreciable effect on the outcome." (LD 12 at 14-15.) The court explained that the security guard, who testified that Petitioner pointed a semiautomatic firearm at him, could reasonably be inferred to possess knowledge of guns from his position as a security guard and would not easily confuse a pellet gun and a semiautomatic firearm. (*Id.* at 15.) The court further noted that there was nothing in the record to dispute the security guard's description of the gun as a semiautomatic firearm. (*Id.*)

The Court agrees with the court of appeal's analysis. Although the trial court may have been erroneous in determining when Petitioner could have possessed the Glock, the trial court had sufficient evidence before it to find the firearm use, namely the security guard's statement that Petitioner pointed a gray semiautomatic firearm at him during the robbery. (*See* 1 CT 79-80; 2 CT 333.) Petitioner's argument that the security guard's identification of the weapon as a gray semiautomatic firearm is mere speculation is unsupported by the evidence, as there is no conflicting evidence or indication that the security guard's statement lacked credibility. (*See* Am. Pet. 48-49; 2 CT 333.) Indeed, the security guard's occupation lends credibility to his determination that the weapon Petitioner pointed at him was

a semiautomatic firearm. Accordingly, viewing the evidence in the light most favorable to the prosecution and presuming that the trial court resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational trier of fact could find the essential elements of use of a firearm in Count 11 beyond a reasonable doubt. *Jackson*, 443 U.S. at 326; *Walters*, 45 F.3d at 1358.

Based on the foregoing, the Court finds that the California courts' rejection of Petitioner's insufficient evidence claims as to Count 11 was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### Claim Three

In his third claim, Petitioner contends that his convictions under Counts 1, 2, and 5 are based upon inadmissible double hearsay. (Am. Pet. 10, 50-52.)

On direct review, the California Supreme Court denied Petitioner's double hearsay claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on these claims is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying the these claims, the court of appeal stated:

#### V. Double Hearsay

Martha Garcia and Israel Cruz, the victims in the robberies on July 12, 1999, (counts one and two) did not speak English. The police officer interviewed them utilizing their neighbor, Jose Lopez, as a translator. Lopez was fluent in English and Spanish. (Lopez was the neighbor that Garcia ran to when she fled the apartment.)

Although Wa Vue Yang, the victim of the carjacking in count five, spoke English, he was interviewed by police officers using a citizen translator, John Cha. Cha was walking in the parking lot where the carjacking took place when he heard a shot.

Police officer Bert Phillips testified at the preliminary hearing regarding the count one and two robberies of Garcia and Cruz. He testified that he utilized the neighbor (Jose Lopez) as an interpreter for Garcia and Cruz. [Petitioner] objected based on "double hearsay." The court noted the objection for the record and impliedly overruled the objection, stating it believed there is case law indicating that it was not double hearsay in regard to a person being used as an interpreter. Officer Phillips's testimony closely followed the information contained in the police report. The same objection was made and overruled when police officer Brian Twedt testified regarding the carjacking of Yang. Officer Twedt's testimony tracked the information contained in the police report.

During the advisements and waivers given by the court and made by [Petitioner] before his case proceeded before the court, the court stated to defendant that it would be considering the police reports and that the reports are hearsay. The court advised [Petitioner] it could not do so without [Petitioner's] permission. [Petitioner] responded he understood and agreed the court could consider the hearsay police reports. [Petitioner] also agreed that the court could consider the preliminary hearing transcript.

[Petitioner] now claims his convictions under counts one, two and five are based upon inadmissible double hearsay and he was denied due process of law and a fair trial.

> Not only did [Petitioner] expressly agree that the trial court could consider the hearsay contained in the police reports (which did not vary in any significant way from the testimony at the preliminary hearing), but he failed to make any objections to any materials submitted for consideration to the trial court. [Petitioner's] failure to object waives the issue for purposes of appeal. (*People v. Szeto* (1980) 29 Cal.3d 20, 32; Evid.Code, § 353.) Had [Petitioner] objected, the People would have had the victims in counts one, two and five testify at trial, thereby obviating the need for a hearsay objection altogether. Because [Petitioner] agreed to the admission of the "double hearsay" below when the trial court determined his guilt, he is in no position to object to it now for the first time on appeal.
>
> We note that the California Supreme Court recently held that the participation of a translator in an out-of-court interview does not interpose a layer of hearsay. "Rather, a generally unbiased and adequately skilled translator simply serves as a 'language conduit,' so that the translated statement is considered to be the statement of the original declarant, and not that of the translator." (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 448.)
>
> Because [Petitioner] failed to raise any objection to the state of bias or skill level of the citizen translators at the preliminary hearing or in the trial court, agreed that the trial court could consider the police reports and preliminary hearing transcript when determining his guilt, and expressly waived any objections to hearsay evidence at his trial, we need not apply the test set forth in *Correa* to determine if the translations were sufficiently unbiased and accurate to permit their translations to be fairly attributed to the declarants.[9]

(LD 12 at 15-17.)[10]

Preliminarily, challenges to a state trial court's evidentiary rulings are not cognizable on federal habeas review unless the admission or exclusion of evidence violated a petitioner's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991); *see also Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999) ("It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process."). "[T]he category of infractions that violate fundamental fairness" is a very narrow

---

[9]  [Court of Appeal footnote 5:]  Although [Petitioner] did not object to the testimony at the preliminary hearing based on the accuracy of the translations, we note that Officer Phillips and Officer Twedt, the testifying officers, were the officers who interviewed the witnesses via the translator. They observed the circumstances under which the out-of-court statements of the victims and translations were made and could assist in evaluating the reliability of the statements and translations. They could describe the demeanor of the translators that might bear on their uncertainty or bias. The officers were also in a position to evaluate the unfamiliarity or lack of relationship of the translators with the declarants. Citizen translator Jose Lopez was described as fluent in English and Spanish. The reliability of the translation given by John Cha was bolstered by the fact that the victim spoke English and thus would have been in a position to correct the translation if it was incorrect.

[10]  The California Court of Appeal based its decision on a state rule of procedure and on the merits.  (LD 12 at 15-17.)  When the claims raised in a habeas petition are easier to resolve on the merits, the interests of judicial economy counsel against deciding the more complicated or uncertain procedural default issues. *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).  Because such a situation exists here, the Court will address Petitioner's claim on the merits.

one. *McGuire*, 502 U.S. at 73 (citation and internal quotation marks omitted). Thus, few evidentiary errors will implicate fundamental fairness. *Id.* at 70; *see also DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001). The Ninth Circuit has opined that "[o]nly if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991); *see also McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993).

The Court notes, as did the court of appeal, that Petitioner waived his right to be confronted by witnesses. (4 RT 503-04.) In addition, Petitioner expressly agreed to submit to the police reports, which the trial court explicitly admonished Petitioner contained hearsay. (*Id.* at 503-05.) Petitioner further agreed to submit to the preliminary hearing transcripts, which contained testimony of the police officers that reiterated the statements made by the interpreters of the victims of the robberies in Counts 1 and 2 and the attempted carjacking in Count 5. (*Id.* at 505.) As discussed under Claim One, *supra*, Petitioner made a voluntary and intelligent waiver of his rights. Based on these facts and the Court's prior analysis, it cannot be said that Petitioner's trial was "so fundamentally unfair as to violate due process." *Spivey*, 194 F.3d at 977-78; *see McGuire*, 502 U.S. at 70.

Furthermore, the AEDPA requires that Petitioner's double hearsay claim with regard to interpreters "not implicate an 'open question' in the [Supreme] Court's jurisprudence." *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007), *cert. denied*, *Foote v. Masto*, 128 S. Ct. 808 (2007) (*citing Carey*, 127 S. Ct. at 653). The "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see* 28 U.S.C. § 2254(d)(1). Because the Supreme Court has not held that an interpreter adds a layer of hearsay, it cannot be said that the California Court of Appeal's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[11] Thus, habeas relief is unwarranted on this claim.

---

[11] Indeed, the Ninth Circuit has stated "the better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991).

# **Claim Four**

In his fourth claim, Petitioner contends that there was insufficient evidence to support a finding that his prior burglary convictions involved entry into an inhabited dwelling and thus could be utilized as strikes. (Am. Pet. 10, 53-57.)

On direct review, the California Supreme Court denied Petitioner's insufficient evidence claim with regard to the prior burglary convictions without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on these claims is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying the these claims, the court of appeal stated:

## **VI. Substantial Evidence of Prior Serious Felony Allegations**

[Petitioner] was charged with having suffered four prior serious felony convictions, burglaries, pursuant to the three strikes law. (§ 667, subd (b), § 1170.12, subd. (a).) The district attorney's evidence offered to prove the priors consisted of the records from the prison. (§ 969b packets.) In addition to identifying information, the records contained the abstract of judgments for each of the priors.

The first abstract of judgment listed two burglary convictions. The date of conviction was listed as March 2, 1994, and the date of the hearing was March 7, 1994. For the first conviction [Petitioner] was sentenced to prison for the upper term of six years. The second conviction was a consecutive one-third the midterm sentence of one year and four months. The abstract listed 1994 as the year the crimes were committed.

The second abstract of judgment offered to prove two burglary strikes described each crime as "RES. BURGLARY." For the first burglary [Petitioner] was sentenced to prison for the upper term of six years. [Petitioner] was also given the upper term of six years for the second burglary conviction; that sentence was stayed. The date of the conviction was August 17, 1992, and the date of the hearing was August 15, 1994. The abstract listed 1992 as the year the crimes were committed.

The court found that [Petitioner] suffered four prior serious felony convictions within the meaning of the three strikes law. The court utilized the strikes to impose 25-to-life terms on counts one, two, five, six, eleven and twelve. The court exercised its discretion and struck the prior conviction allegations for counts three, four, eight and nine.

[Petitioner] asserts that the evidence was not sufficient to support a finding that the prior burglaries involved entry into an inhabited dwelling and thus could not be utilized as strikes. While acknowledging that the punishment imposed for each of the four prior burglary convictions corresponds with the punishment for first degree burglary and that normally proof of first degree burglary convictions committed in 1992 or 1994 would be considered sufficient to establish that the burglaries were serious felonies, [Petitioner] states there is nothing in the record to demonstrate when the crimes were committed. Thus, [Petitioner] claims the burglaries could have been committed at a time when the definition of first degree burglary did not contain the required elements of proving a prior serious felony conviction.

"[T]he prosecution bears the burden of proving each element of a sentence enhancement beyond a reasonable doubt; a reviewing court must review the record in the light most favorable to the judgment to determine whether substantial evidence supports the factfinder's conclusion, i.e., whether a reasonable trier of fact could have found that the prosecution had sustained its burden of proving the defendant guilty beyond a reasonable doubt." (*People v. Jones* (1999) 75 Cal.App.4th 616, 631.)

Under the three strikes law, a felony conviction is utilized as a strike if it is listed

as a serious felony under section 1192.7, subdivision ©. (§ 667, subd. (d)(1).) At the time of defendant's trial, one of the serious felonies listed in section 1192.7 subdivision (c)(18) was: "Burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building."

[Petitioner's] argument fails. The date of the commission of the burglaries is listed for each prior conviction on the abstract of judgment. In addition, for the two August 17, 1992, convictions the sentence imposed was the sentence for first degree burglary; and the abstract defined the crime as "RES. BURGLARY." This was clearly an abbreviation for residential burglary. [Petitioner] has not suggested that any other reasonable meaning could be attributed to this designation. "The terms 'residence' and 'inhabited dwelling house' for purposes of a serious felony are equivalent." (*People v. Garrett* (2001) 92 Cal.App.4th 1417, 1433.)

Substantial evidence supports the trial court's utilization of the two prior burglary convictions from 1994 as strikes. Again, the burglaries are first degree burglaries because the penalties imposed fit only the punishment for first degree burglary. Also, the dates of the crimes are listed in the abstract of judgment. First degree burglary in 1992 meets the requirements of a serious felony in section 1192.7. [Petitioner] concedes that proof of burglary convictions committed in 1992 or 1994 would be considered sufficient to establish that the burglaries were serious felonies.

(LD 12 at 17-19.)

The Court agrees with the analysis of the court of appeal. Petitioner's contention that there was insufficient evidence that his prior burglary convictions were strikes is refuted by the dates the burglaries were committed, 1992 and 1994, as shown in the abstracts of judgment (*see* 2 CT 371-72), the sentences he received (*see id.*), *see also* California Penal Code section 461, and the abbreviation "RES. BURGLARY" in the abstract of judgment relating to the 1992 convictions (*see* 2 CT 372). The sentences Petitioner received correspond with first degree burglary, *see* California Penal Code section 461, which includes burglary of an inhabited dwelling, *see id.* section 460(a). Accordingly, viewing the evidence in the light most favorable to the prosecution and presuming that the trial court resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational trier of fact could find beyond a reasonable doubt that the prior burglary convictions could be utilized as strikes. *Jackson*, 443 U.S. at 326; *Walters*, 45 F.3d at 1358.

Based on the foregoing, the Court finds that the California courts' rejection of Petitioner's insufficient evidence claim as to his prior burglary convictions was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

///

21

## **Claim Five**

In his fifth claim, Petitioner states that the trial court erred in imposing two unstayed enhancements for impersonation of a police officer under the residential robbery Counts 1 and 2. (Am. Pet. 10, 58-61.) Petitioner contends that only one unstayed enhancement for impersonating an officer could be imposed consistent with California Penal Code section 654,[12] and that imposition of the unauthorized terms further deprived Petitioner of his liberty interest created by section 654 and due process of law. (*Id.* at 58-59 (*citing Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)).)

On direct review, the California Supreme Court denied Petitioner's claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on this claim is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying this claim, the court of appeal stated:

### **VII. Imposition of Two Enhancements for Impersonating a Police Officer**

Section 667.17 provides that "Any who violates the provisions of Section 538d [impersonating a police officer] during the commission of a felony shall receive an additional one-year term of imprisonment to be imposed consecutive to the term imposed for the felony, in lieu of the penalty that would have been imposed under Section 538d." All convictions under section 538d are misdemeanors.

The court found true a section 667.17 enhancement for counts 1 and 2, the robberies of Garcia and Cruz in their home on July 12, 1999. The court imposed a separate one-year enhancement for each robbery.

[Petitioner] contends that only one enhancement for impersonating an officer could be imposed consistent with section 654. He asserts he committed a single act of impersonating an officer, in a single transaction, and incident to a single intent and objective. [Petitioner] points to the prosecutor's sentencing memorandum in which it was stated, "This is a one year enhancement but [is] probably limited to a single term under the facts of this case." [Petitioner] claims that the prohibition of multiple punishment for a single act provided by section 654 has been held to apply to enhancements. Although the crimes against Cruz and Garcia constituted crimes of violence against different victims warranting separate punishment, argues [Petitioner], the enhancement does not describe any separate act of violence warranting additional punishment for each victim and thus [Petitioner] should only be punished for one enhancement.

"Some courts have considered enhancements exempt from section 654 because

---

[12] California Penal Code section 654 states:

(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

(b) Notwithstanding subdivision (a), a defendant sentenced pursuant to subdivision (a) shall not be granted probation if any of the provisions that would otherwise apply to the defendant prohibits the granting of probation.

Cal. Penal Code § 654.

they do not define a crime or offense but relate only to the penalty to be imposed [citation], whereas other courts reason that section 654 applies to enhancements, just like offenses, because the statute proscribes all attempts to impose multiple punishment for the same act [citation]. [Citation.] While recognizing this disagreement, the Supreme Court has not yet resolved it." (*People v. Reeves* (2001) 91 Cal.App.4th 14, 55.)

We do not need to resolve the issue here because we find that even if section 654 is applicable to the enhancements, there was sufficient evidence before the trial court for it to conclude that the enhancements involved divisible conduct giving rise to more than one act within the meaning of section 654. "The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.)

As previously set forth, the one-year enhancement imposed pursuant to section 667.17 is "in lieu of the penalty that would have been imposed under Section 538d." Section 538d provides in pertinent part: "Any person other than one who by law is given the authority of a peace officer, who willfully wears, exhibits, or uses the authorized uniform, insignia, emblem, device, label, certificate, card, or writing, of a peace officer, with the intent of fraudulently impersonating a peace officer, or of fraudulently inducing the belief that he or she is a peace officer, is guilty of a misdemeanor." Because the penalty contained in section 667.17 is in lieu of the penalty provided in section 538d, if we determine that [Petitioner] could have properly been punished for two counts of violating section 538d, it follows that two enhancements could be properly imposed.

The proscription against impersonating a police officer is clearly meant to encompass preventing defendants from fooling others into believing that they are police officers and thereby gaining an advantage over the person fraudulently induced in this belief. In the case here, [Petitioner] first encountered Ms. Garcia. She saw that he was dressed in a police officer's uniform and she complied with his demands. It is reasonable to infer that her compliance was based in part on her observation of the uniform, or at least that [Petitioner] intended her to be fraudulently induced into believing so. After [Petitioner] had gained Garcia's compliance, Cruz entered the room. Cruz realized that [Petitioner] was dressed in a police uniform. He too complied with [Petitioner's] demands and was handcuffed. Again, it is reasonable to infer that his compliance was based in part on his observation of the uniform, or at least [Petitioner] intended him to be fraudulently induced into believing so. Also, after Garcia escaped and went to her neighbor, Jose Lopez, Lopez entered the apartment and [Petitioner], dressed in his police uniform, said to him, "Do you want to go to jail too?" Lopez left. Thus [Petitioner's] appearance in a uniform was utilized to cause Lopez to leave and allow [Petitioner] to remain with robbery victim Cruz in the apartment, and more easily escape.

In *People v. Trotter* (1992) 7 Cal.App.4th 363 the defendant fired three shots at the same police officer while attempting to escape. The second shot was fired within a minute of the first shot, and the third shot was fired seconds after the second shot. The defendant claimed on appeal that section 654 precluded the court from imposing punishment for two assaults-one based on the first shot and one based on the second shot. The appellate court disagreed with the defendant's contention, finding that each shot evinced a new and separate intent and objective. "It is not the 'nature' of the offenses which governs the applicability of section 654." (7 Cal.App.4th at p. 368.)

[Petitioner] separately and independently induced Garcia and Cruz into believing that he was a police officer. In addition, after Garcia fled [Petitioner] did not abandon his ruse but utilized it to cause Jose Lopez to flee while [Petitioner] was still engaged in the robbery of Cruz. The inducements were not only separated in time, but were separated because they involved separate victims. The trial court did not err in imposing two separate enhancements.

(LD 12 at 19-22.)

Respondent maintains that Petitioner's California Penal Code section 654 claim involves solely

23

the interpretation and/or application of state law and, as such, is not cognizable on federal habeas review. (*See* Answer 23.) This Court agrees. *See McGuire*, 502 U.S. at 67-68; *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (finding allegation that state court misapplied section 654 a question of state law not cognizable on habeas). Moreover, Petitioner's attempt to characterize this claim as a federal constitutional claim under violation of a state-created liberty interest or due process is without merit. Petitioner has made no showing, and this Court has found none, that the Supreme Court has recognized section 654 creates a liberty interest protected by the Fourteenth Amendment. In addition, based on the court of appeal's analysis of the facts, it cannot be said that the trial court's imposition of two enhancements for impersonating a police officer was "so fundamentally unfair as to violate due process." *Spivey*, 194 F.3d at 977-78; *see McGuire*, 502 U.S. at 70. The court of appeal's analysis demonstrates that Petitioner separately and independently induced victims Garcia and Cruz into believing that he was a police officer. (LD 12 at 21-22; *see* 1 CT 86-91.)

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claim Six

In his sixth claim, Petitioner contends that California's Three Strikes law is unconstitutionally vague because it did not provide adequate notice that Petitioner could be sentenced to twenty-five years to life per count. (Am. Pet. 10, 62-66.)

On direct review, the California Supreme Court denied Petitioner's Three Strikes claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on this claim is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying this claim, the court of appeal stated:

### VIII. Three Strikes Vagueness Challenge
On several of [Petitioner's] convictions the court imposed sentences of 25 years to life and ordered that they run consecutively. [Petitioner] claims that the three strikes law is [un]constitutionally vague because it did not provide him with adequate notice authorizing a sentence of 25 years to life per count.
Courts have uniformly found that the three strikes law is not vague and that principles of aggregation do not apply. (*People v. Fuhrman* (1997) 16 Cal.4th 930; *People v. Stofle* (1996) 45 Cal.App.4th 417; *People v. Kinsey* (1995) 40 Cal.App.4th 1621.) The Supreme Court in *People v. Hendrix* (1997) 16 Cal.4th 508 found that the

sentencing language in section 667, subdivisions (c)(6), (c)(7), and (e)(2)(B), is clear and unambiguous. (16 Cal.4th at p. 512.) [Petitioner] has not offered any compelling justification for departing from this analysis here.

(LD 12 at 22-23.)

Although "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute," *United States v. Batchelder*, 442 U.S. 114, 123 (1979), "a vagueness challenge may not rest on arguments that the law is vague in its hypothetical applications, but must show that the law is vague as applied to the facts of the case at hand." *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir.1997) (*citing Chapman v. United States*, 500 U.S. 453, 467 (1991)). The test for vagueness is whether the sentencing provision fails "to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated." *United States v. Rearden*, 349 F.3d 608, 614 (9th Cir.2003); *Johnson*, 130 F.3d at 1354.

The Court does not find that the state courts' determination is unreasonable in light of this precedent. Far from ambiguous, the Three Strikes statute explicitly states that it will apply "in addition to any other enhancement or punishment provisions which may apply," California Penal Code section 667(e), and that it will apply "[n]otwithstanding any other law . . . in every case in which a defendant has a prior felony conviction," *id.* section 667(f)(1). In addition, because Petitioner had two or more prior felony convictions that had been pled and proved, California Penal Code section 667(e)(2)(A) applied, which states:

> [T]he term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:
> I) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.
> (ii) Imprisonment in the state prison for 25 years.
> (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046.

Cal. Penal Code § 667(e)(2)(A). Furthermore, California Penal Code section 667(e)(2)(B) explains the use of consecutive sentencing:

> The indeterminate term described in subparagraph (A) shall be served *consecutive* to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) *shall not be merged therein* but shall commence at the time the person would otherwise have been released from prison.

25

Cal. Penal Code § 667(e)(2)(B) (emphasis added). California's Three Strikes law gives a person of ordinary intelligence fair notice that, if he has been convicted of two or more prior felony convictions, he will receive an indeterminate term of life imprisonment that will be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. *Rearden*, 349 F.3d at 614. This language is sufficiently clear as to the cumulative impact of the Three Strikes law to survive constitutional scrutiny under the vagueness doctrine.[13]

Accordingly, the Court finds that the California courts' rejection of Petitioner's Three Strikes vagueness claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claim Seven

In his seventh claim, Petitioner contends that the cumulative effect of errors deprived him of due process and a fair trial. (Am. Pet. 11, 67.)

On direct review, the California Supreme Court denied Petitioner's cumulative error claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on this claim is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying this claim, the court of appeal stated: "[Petitioner] asserts that the cumulative effect of the above claimed errors deprived him of a fair trial as to the charges and the prior conviction allegations. [¶] As all of the above discussions indicate, error did not occur. [Petitioner's] cumulative error argument fails." (LD 12 at 23.)

"Cumulative error occurs when although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant." *Wooten v. Kirkland*, 540 F.3d 1019, 1022 n.1 (9th. Cir. 2008) (*quoting Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)) (internal quotation marks omitted). A court "must

---

[13]    Federal courts sitting in California have rejected, uniformly, vagueness challenges to California's Three Strikes law. *See, e.g., Penton v. Kernan*, 528 F. Supp. 2d 1020, 1041-42 (S.D. Cal. 2007); *Puckett v. Newland*, No. C 01-20018 JW (PR), 2007 WL 4219396, at *6-7 (N.D. Cal. Nov. 28, 2007); *Vang Cha Yang v. Lewis*, No. 1:02-CV-06408 LJO JMD (HC), 2007 WL 1795729, at *25-26 (E.D. Cal. June 20, 2007); *Rablovsky v. Kane*, 407 F. Supp. 2d 1142, 1158 (C.D. Cal. 2005).

ask whether the aggregated errors so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (*quoting Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004)) (internal quotation marks omitted). "[W]here there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation." *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000).

Because the Court finds, as discussed throughout this Order, no error committed by the trial court, there is no cumulative error. Accordingly, the Court finds that the California courts' rejection of Petitioner's cumulative error claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### **Claim Eight**

In his eighth claim, Petitioner contends that his sentence of 154 years to life, plus 47 years constitutes cruel and unusual punishment in violation of the United States and California Constitutions. (Am. Pet. 11, 68-82.)

On direct review, the California Supreme Court denied Petitioner's cruel and unusual punishment claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on this claim is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying this claim, the court of appeal stated:

**X. Cruel and Unusual Punishment**
[Petitioner] asserts that his sentence of 154 years to life plus 47 years, 8 months constitutes cruel and unusual punishment in violation of the federal and California Constitutions. [Petitioner] states that he did not harm anyone and his only strike priors are burglaries. He has exceptional support from family, friends, and others in the community. [Petitioner] relies heavily on the fact that his troubles are all drug related without any desire to do violence. He claims his sentence is disproportionate because he cannot possibly serve it during his lifetime. In addition, defendant argues his sentence is disproportionate when compared to punishments in California for other more serious offenses and is disproportionate when compared to recidivist punishments in other jurisdictions.
We choose not to rehash a detailed rejection of the argument that sentences imposed under the three strikes law are disproportionate when compared to other serious crimes in California or when compared to recidivist punishments in other jurisdictions. These arguments have been repeatedly rejected by this court and other courts and we see no reason to revisit them here. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, *People v. Askey* (1996) 49 Cal.App.4th 381, *People v. Cooper* (1996) 43 Cal.App.4th 815.)

27

We briefly set forth [Petitioner's] criminal history in rejecting his argument that his punishment is disproportionate as applied to this offense and this offender. First, the series of crimes resulting in the punishment imposed here are very serious and most involved a high degree of danger to the victims and the public in general. In the three robberies in which [Petitioner] personally used a firearm, the potential for serious harm and violence is apparent. The two carjackings involved the personal use of a weapon. [Petitioner] confronted his victims in public and utilized a weapon, which appeared to be a gun, in the process of the carjackings. Carjackings are serious offenses against the person. The first degree residential burglary is a serious crime with a high potential for harm. In addition, [Petitioner] was brazen enough to wear a police uniform in carrying out some of his crimes; the sophistication of engaging in this behavior, combined with the high potential for serious consequences, is clear. [Petitioner's] sentence reflects his repeated engagement in dangerous and serious criminal behavior.

In addition to his current conduct, [Petitioner's] criminal history vitiates against his argument that his sentence constitutes cruel and unusual punishment. [Petitioner] was born in 1966. His juvenile record indicates that in 1980 he was convicted of two counts of burglary. Five months later he was placed on informal probation for being out of control and resisting an officer. That same year he was convicted of misdemeanor burglary. The next year a conviction for receiving stolen property was found true.

Becoming a legal adult did not deter his criminal behavior. He has one or more convictions for each year of his adult life, continuing until he was sent to prison for his four prior burglary convictions that are the subject of his strikes. He was paroled on February 2, 1999. What followed was the series of crimes resulting in his convictions here. During the course of his criminal history [Petitioner] was repeatedly sent for alcohol and/or drug treatment and was committed to the California Rehabilitation Center on one occasion. "[D]rug addition is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment." (*People v. Martinez, supra,* 71 Cal.App.4th at p. 1511.) The escalating seriousness of his criminal behavior beginning as a juvenile and continuing throughout his life, combined with his failure to reform, makes [Petitioner's] situation an example of what the three strikes law aims to punish severely.

(LD 12 at 23-25.)

Increased punishment for recidivists imposed pursuant to state statutory schemes regularly has survived Eighth Amendment challenges. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court made clear that, in the context of an Eighth Amendment habeas challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (*citing Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare," *Rummel*, 445 U.S. at 272, and the Supreme Court has cautioned federal courts to be "reluctant to review legislatively mandated terms of imprisonment for crimes concededly classified and classifiable as felonies," *Hutto v. Davis*, 454 U.S. 370, 374 (1982).

*See Rummel*, 445 U.S. at 274. "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on Eighth Amendment grounds." *United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir. 1990).

In *Lockyer*, the Supreme Court concluded that two consecutive 25 years to life sentences with the possibility of parole, imposed under California's Three Strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment. *See Lockyer*, 538 U.S. at 77; *see also Ewing v. California*, 538 U.S. 11 (2003) (holding that a sentence of 25 years to life imposed for felony grand theft under California's Three Strikes law did not violate the Eighth Amendment, especially where defendant had long history of increasingly violent recidivism); *cf. Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005) (remanding for examination of the "factual specifics" of each of Reyes' prior convictions in order to "determine whether the offense was a 'crime against a person' or involved violence"); *Ramirez v. Castro*, 365 F.3d 755, 768-70 (9th Cir. 2004) (finding sentence of 25 years to life was grossly disproportionate to the crime committed where the current offense was a "wobbler" felony for the nonviolent shoplifting of a $199 VCR, and the two prior strike convictions arose from one guilty plea relating to nonviolent crimes where no weapons were involved and for which he received a sentence of one year in county jail and three years probation).

In California's Three Strikes law context, the Ninth Circuit has applied the Supreme Court's analysis in *Solem* to examine as an initial matter "whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history." *Reyes*, 399 F.3d at 967 (*quoting Ramirez*, 365 F.3d at 768). In applying the test of disproportionality, the Ninth Circuit begins by looking at the "core conduct" of the offender's current conviction and then reviewing the offender's criminal history and the underlying facts of the predicate offenses. *Ramirez*, 365 F.3d at 768. If this analysis "raises an inference of gross disproportionality," *id.* at 770 (*quoting Harmelin*, 501 U.S. at 1005 (1991)), the court then compares the sentence to those imposed for other crimes in the same jurisdiction, as well as those imposed for the same crime in other jurisdictions, *id.* at 764 (*citing Solem*, 463 U.S. at 292).

Preliminarily, to the extent that Petitioner challenges his sentence as a violation of the California Constitution, that claim is not cognizable on federal habeas corpus. *See* 28 U.S.C. § 2254(a); *see also McGuire*, 502 U.S. at 71-72.

In this case, as the court of appeal elaborated, Petitioner's conduct presented a very high level of danger to society. The series of crimes resulting in Petitioner's third strike were very serious and most involved a high degree of danger to the victims and the public in general. Petitioner personally used a firearm in three robberies (Counts 1, 2, and 11) and a dangerous weapon in one carjacking (Count 6) and one attempted carjacking (Count 5). (LD 1.) Robberies and carjackings are serious offenses against the person, especially with the use of a firearm or dangerous weapon. Petitioner was also convicted of first degree residential burglary (Count 12) and utilized a police uniform in carrying out two robberies (Counts 1 and 2). (LD 1.) Petitioner attempted to evade police in a carjacked vehicle at a high rate of speed, which presented a danger not only to the police officer but to the public in general. (1 CT 67-68.) In addition, Petitioner was seen leaving Fresno Arms, where a car had been driven into the front door and which license plate number matched that of the car Petitioner utilized to evade police at a high rate of speed. (1 CT 79-80.) Petitioner's triggering convictions were more dangerous and serious than those of the offenders in *Lockyer* and *Ewing*, both of which upheld the offenders' life sentences.

Furthermore, the court of appeal noted Petitioner's criminal history, which included burglary, resisting an officer, and receiving stolen property. (LD 12 at 24.) Petitioner also had four prior burglary convictions that formed the basis for his prior strikes. (2 CT 371-72.) This Court agrees with the court of appeal that the seriousness and danger to the public of Petitioner's actions increased with time, with the culmination of the convictions forming the basis for his indeterminate sentence. The trial court's imposition of a life term for Petitioner's current convictions does not raise an "inference of gross disproportionality," in light of the seriousness of Petitioner's triggering convictions and his lengthy criminal history. *Ramirez*, 365 F.3d at 768; *see Lockyer*, 538 U.S. at 77; *Ewing*, 538 U.S. at 11; *Joshua v. Adams*, 231 F. App'x 592, 593-94 (9th Cir. 2007) (upholding 25 years to life sentence of offender for stealing two bottles of alcohol with prior convictions of first and second degree robberies); *Rios v. Garcia*, 390 F.3d 1082, 1086 (9th Cir. 2004) (rejecting petitioner's claim that sentence of 25 years to life constituted cruel and unusual punishment when current offense was shoplifting $79.98 worth of watches following a minor struggle with a loss prevention officer and petitioner's lengthy criminal record included two prior robberies that "involved the threat of violence because his cohort used a knife").

Accordingly, the Court finds that the California courts' rejection of Petitioner's cruel and unusual punishment claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

### Claim Nine

In his ninth claim, Petitioner contends that he never personally or intelligently waived jury trial on his prior conviction allegations. (Am Pet. 11, 83-84.)

On direct review, the California Supreme Court denied Petitioner's jury trial waiver claim without comment or citation to authority. (*See* LD 6-7.) The last reasoned decision on this claim is that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803; *see supra* note 7. In denying this claim, the court of appeal stated:

> **XI. Waiver of Jury Trial for Prior Convictions**
> [Petitioner] claims that his constitutional rights were violated because he did not personally or intelligently waive his right to a jury trial on the prior conviction allegations. [Petitioner] acknowledges that state law is currently contrary to the position he asserts, but he raises this claim in an effort to preserve the issue in the event of federal postconviction review.

(LD 12 at 25.)

As the Court stated in its discussion of Claim One, *supra*, Petitioner "has no federal right to have a jury decide" the "existence of a prior conviction." *Davis*, 446 F.3d at 963. The fact that Petitioner had a state statutory right to a jury trial on his prior convictions does not avail him, *see* California Penal Code section 1025, because the United States Constitution permits prior convictions to be used to enhance a sentence, without being submitted to a jury, so long as the convictions were themselves obtained in proceedings that required the right to a jury trial and proof beyond a reasonable doubt. *Apprendi*, 530 U.S. at 488. There is no suggestion that Petitioner's prior convictions were obtained without the requisite procedural safeguards.

Accordingly, the Court finds that the California courts' rejection of Petitioner's jury trial waiver claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

///

**Claim Ten**

In his tenth and final claim, Petitioner contends ineffective assistance of trial counsel for a mélange of reasons.  (Am. Pet. 116-23.)[14]

Petitioner did not raise this claim on direct review before the California Court of Appeal or the California Supreme Court.  (LD 2, 6.)  However, Petitioner did raise this claim in his two habeas petitions before the California Supreme Court.  (LD 13, 15.)  As discussed in note 7, *supra*, the California Supreme Court's citations to *In re Swain* and *People v. Duvall* indicate that Petitioner failed to allege facts with particularity.  To the extent Petitioner may have failed to exhaust his claim for failure to properly present this claim to the California Supreme Court, *see James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994), the Court will proceed on the merits pursuant to 28 U.S.C. § 2254(b)(2), as Petitioner does not raise a colorable claim of ineffective assistance of counsel.  *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).  In addition, because it is clear the California Supreme Court did not reach the merits of Petitioner's ineffective assistance claim, the Court conducts a de novo review of this claim.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]e hold that when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo."); *id.* at 1168 ("Nonetheless, under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence.").

For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them.  *Id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88.  Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the

---

[14]  Although this claim for relief is not listed as such in Petitioner's catalog of claims and is instead buried within Petitioner's exhibits, the Court liberally construes the Amended Petition to include this claim for relief.  *See Solis v. County of L.A.*, 514 F.3d 946, 957 n.12 (9th Cir. 2008) (reiterating the construal of *pro se* pleadings and motions liberally).

wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance, will the petitioner prove deficient performance. *Id.* at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment. *Id.* at 691; *Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir. 1998). A petitioner must show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694. Thus, the petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Petitioner lists at least twenty-six reasons why his trial counsel was ineffective. (Am. Pet. 116-23.) The Court agrees with Respondent's analysis that Petitioner fails to show that his counsel was deficient or that Petitioner suffered prejudice from any alleged deficiency, and the Court will address each of Petitioner's contentions in turn.

Petitioner contends that counsel failed to correct errors in the probation officer's report. (Am. Pet. 116-17, 129, 131-32, 135-36.) Petitioner alleges that counsel's failure to correct the errors was "very detrimental to the Appellants [sic] sentencing." (*Id.* 117.) This claim fails because "there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context." *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). Furthermore, Petitioner has failed to demonstrate that the trial court relied on alleged errors in the probation report or would have sentenced him differently had Petitioner's proposed changes been made.

Petitioner next states that counsel was deficient because he failed to present witnesses "who might have impeached the credibility of the victims in counts 1, 2, 5 and 6." (Am. Pet. 117.) Petitioner suggests that persons named Angel and Angie Gayton would have testified that "Cruz Rangel" was a drug dealer and owed Petitioner money. (*Id.*) Petitioner does not allege that he informed counsel of the Gaytons and their potential testimony. More importantly, the testimony would have no apparent

33

relevance. Assuming that Petitioner's reference to "Cruz Rangel" is to the victim of the residential robbery in Count 2, Israel Cruz (*see* 1 CT 193), the fact that Cruz Rangel allegedly sold narcotics and was indebted to Petitioner would not be a defense to Petitioner's conviction of robbery.

Petitioner claims that counsel "missed numerous meetings" with him and was "distracted or inattentive." (Am. Pet. 118.) Petitioner fails to explain how this prejudiced his case or impacted his waiver of rights at trial. The record indicates that Petitioner was satisfied with his consultations with counsel at the time he agreed to waive his rights. (*See* 4 RT 505-06.)

Petitioner contends counsel coerced him into entering into a "slow plea" after Petitioner was unable to pay $5,000 for trial. (Am. Pet. 118-19.) This claim of coercion is refuted by the colloquy between Petitioner and the trial court wherein Petitioner waived his rights. (*See* 4 RT 502-06.) Petitioner's unsupported claim of coercion cannot overcome his statements in open court. *See Strickland*, 466 U.S. at 700; *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (indicating that a petitioner's statements in open court are presumed true and cannot be easily overcome by later assertions of coercion).

Petitioner next claims that counsel "collaborated" with the prosecutor and "constantly fostered Appellants [sic] fear of receiving 360 years to life." (Am. Pet. 119.) It is not improper, however, for counsel to engage in plea negotiations with the prosecution. (*See* 4 RT 501 (detailing the prosecutor's comment that he and defense counsel "worked quite considerably on any possible resolution" of the case).) Petitioner has not established that counsel's dealings with the prosecution were improper or contrary to Petitioner's best interests. In addition, Petitioner alleges that counsel stated that he would receive a sentence of sixty years in return for entering a slow plea. (Am. Pet. 119.) Petitioner has provided no evidentiary support for this assertion. To the contrary, the record indicates that counsel and the prosecutor could not agree on a sentence. (*See* 4 RT 501 (detailing the prosecutor's comment that plea negotiations had not borne fruit "because of the numbers").) The record shows there was no tentative sentence, although the facts were largely undisputed. (*Id.*)

Petitioner argues counsel was deficient because he advised Petitioner to testify against his wishes about a pellet gun. (Am. Pet. 120.) Petitioner believes that his testimony had the effect of conceding he was the perpetrator of the attempted carjacking in Count 5. (*Id.*) This allegation is mistaken because

34

the evidence revealed Petitioner as the perpetrator of the attempted carjacking in Count 5 due to Petitioner fleeing the scene and leaving his backpack that contained his Hollywood Video card. (*See* 1 CT 115-119, 161-163, 289.) In addition, Petitioner confronted the victim face-to-face, and Petitioner's identification was unlikely an issue. (*See id.* 110, 112, 288-289.) However, an issue arose whether Petitioner used a firearm or merely a pellet gun in the attempted carjacking. Petitioner's testimony reduced a firearm enhancement to a dangerous weapon enhancement and thereby reduced his sentence. (2 CT 391; 4 RT 536-37.) Accordingly, counsel was not deficient for calling Petitioner for limited testimony about the type of weapon used in the attempted carjacking.

Petitioner asserts that counsel was ineffective for allowing Petitioner to waive his state statutory right to a jury trial on his prior conviction allegations. (Am. Pet. 120.) The record indicates that Petitioner knowingly and voluntarily waived his right to a jury trial (*see* 4 RT 502-03), as the Court found in its discussion of Claims One and Nine, *supra*.

Petitioner contends counsel was ineffective because his judgment was impaired by the gravity of the charges. (Am. Pet. 120.) Petitioner does not elaborate in what way counsel's judgment suffered because of alleged despair over the seriousness of the charges. This vague and conclusory allegation is insufficient to support a claim of deficient performance of counsel. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief."). Similarly, Petitioner makes a vague and conclusory assertion that counsel was "overwhelmed" by the complexity of possible defenses. (Am. Pet. 120.) Petitioner has not enumerated which defenses a competent attorney would have raised but which counsel omitted.

Petitioner contends that there was a breakdown in the attorney-client relationship. (*Id.* 120.) The record and Petitioner's allegations indicate that defense counsel was retained. (1 CT 25; 2 RT 104.) Petitioner has not identified in the record where he had alerted the court to his difficulties with counsel, and there is no mention of difficulties during Petitioner's waiver of rights with the court. (4 RT 501-506.)

Petitioner claims counsel failed to subpoena or otherwise produce several witnesses: Victim Martha Garcia, victim Israel Cruz, victim Wa Vue Yang, Petitioner's father Noel Lopez, and victim Rick

35

Lopez. (Am. Pet. 120-22, 138-39.) This allegation is without merit due to Petitioner's informed, voluntary, and express agreement to proceed based on the police reports and the preliminary hearing transcripts rather than calling witnesses. (*See* 4 RT 501-06); *United States v. Gagnon*, 470 U.S. 522, 527-29 (1985) (holding where defendant is aware of intended manner of procedure, and raises no objection, there is no violation of defendant's rights when that manner of procedure is followed). Moreover, Petitioner fails to explain what counsel would have gained by cross examining Martha Garcia and Israel Cruz. *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (stating petitioner must show what testimony would have been elicited and how it would have changed the outcome). As discussed with regard to Count 5, *supra*, there was nothing to gain from showing victim Yang a lineup because Petitioner's identification was not at issue. (*See* 1 CT 115-119, 161-163, 289.) Furthermore, Petitioner's identity was not seriously disputed in the carjacking of Lao Cha (Count 6) because it happened moments after the attempted carjacking of Yang (Count 5), only one-quarter mile away, and again it occurred in a face-to-face encounter. (*See* 1 CT 44-48, 51, 118.) Nor was it ineffective for counsel not to call Petitioner's father because family members are easily impeached for bias and are unlikely to change the outcome. *See, e.g.*, *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995).

Petitioner claims it was error for counsel not to object to "highly suggestive" hand gestures allegedly used by the prosecution to elicit testimony from victim Lao Cha. (Am. Pet. 121.) This allegation is unsupported by any evidence, and Petitioner also fails to explain how the prosecution's hand gestures changed the outcome of trial.

Petitioner argues counsel was ineffective for failing to subpoena victim Rick Lopez (Count 11) to identify Petitioner from a lineup and for not calling Rick Lopez during the preliminary hearing. (Am. Pet. 121.) Petitioner also faults counsel for not explaining that Petitioner broke a victim's window out of frustration and did not enter or burglarize the victim's apartment (Count 12). (*Id.* 121-22.) As previously stated, Petitioner knowingly and intelligently agreed to waive his rights and submit to a bench trial on the police reports and the preliminary transcript. (*See* 4 RT 501-06.) Moreover, Petitioner's burglary explanation lacks credibility because the victim saw the burglar open his bedroom door. (*See* 1 CT 133.)

Petitioner further claims that counsel was ineffective for failing to move to dismiss Count 12 (burglary) pursuant to California Penal Code section 995, failing to file discovery motions, for giving priority to other more lucrative cases, for falsely advertising expertise in Three Strikes cases, and for failing to raise an objection pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). (Am. Pet. 122-23.) These claims are without merit. Moving to dismiss Count 12 pursuant to California Penal Code section 995[15] would have been futile—not only was there reasonable and probable cause to hold Petitioner to answer to the charge, but the court eventually found Petitioner guilty of that charge beyond a reasonable doubt based on the same evidence used to hold him to answer. (*See* 4 RT 537.) Counsel was not required to file discovery motions because the prosecution has an ongoing *sua sponte* duty to provide discovery in criminal cases. *See* Cal. Penal Code § 1054. In addition, the record shows that the parties exchanged discovery. (*See* 3 RT 204.) Petitioner's allegations that his case was subordinated by counsel and that counsel lacked expertise in the Three Strikes law are conclusory and unsupported. Finally, counsel cannot be faulted for failing to invoke *Blakely* because that decision was not rendered until June 24, 2004—several years after Petitioner's bench trial and sentencing in 2000. Furthermore, alleged omissions by counsel at a noncapital sentencing hearing do not establish a Sixth Amendment violation because "there is no clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the noncapital sentencing context." *Grigas*, 443 F.3d at 1158.

Based on the foregoing, Petitioner has failed to show counsel's performance was deficient. *Strickland*, 466 U.S. at 687-88. Moreover, even if counsel's performance was deficient, Petitioner has failed to show the result of the trial would have been any different. *Id.* Thus, based on its de novo

---

[15] California Penal Code section 995 provides:
(a) Subject to subdivision (b) of Section 995a, the indictment or information shall be set aside by the court in which the defendant is arraigned, upon his or her motion, in either of the following cases:
    (1) If it is an indictment:
        (A) Where it is not found, endorsed, and presented as prescribed in this code.
        (B) That the defendant has been indicted without reasonable or probable cause.
    (2) If it is an information:
        (A) That before the filing thereof the defendant had not been legally committed by a magistrate.
        (B) That the defendant had been committed without reasonable or probable cause.
(b) In cases in which the procedure set out in subdivision (b) of Section 995a is utilized, the court shall reserve a final ruling on the motion until those procedures have been completed.
Cal. Penal Code § 995.

review of the record, habeas relief is not warranted on this claim.

**Certificate of Appealability**

Under the AEDPA, an applicant seeking to appeal a district court's dismissal of a habeas petition under 28 U.S.C. § 2254 must first obtain a certificate of appealability ("COA") from a district judge or circuit judge. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A judge should either grant the COA or state reasons why it should not issue. Fed. R. App. P. 22(b)(1). A COA request should be decided by a district court in the first instance. *Id.*; *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

The applicant for a COA must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *United States v. Christakis*, 238 F.3d 1164, 1168 n.4 (9th Cir. 2001). A "substantial showing" is defined as a demonstration (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues differently; or (3) that issues are adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see Slack*, 529 U.S. at 483-84 (stating that except for substituting the word "constitutional" for the word "federal," § 2253 codified the pre-AEDPA standard announced in *Barefoot v. Estelle*). When, as present here, a district court has rejected constitutional claims on their merits, the COA standard is straightforward. "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

This Court has reviewed the record of this case and finds that reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. On the merits of this case, reasonable jurists would not debate the constitutionality of Petitioner's conviction and sentence. Accordingly, a certificate of appealability is denied.

///
///
///
///
///
///

38

## CONCLUSION AND ORDER

For the reasons discussed above, the Court DENIES the Amended Petition for Writ of Habeas Corpus with prejudice and DENIES the issuance of a certificate of appealability. The Clerk of Court is ORDERED to enter Judgment for Respondent and to close Case No. CV F 05-00481 LJO TAG HC.

IT IS SO ORDERED.

**Dated:    November 5, 2008                     /s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE